**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| IN RE: NANCY WHITE VENCIL | : | No. 90 MAP 2015 |
| | : | |
| | : | Appeal from the Order of the Superior |
| APPEAL OF:  PENNSYLVANIA STATE | : | Court at No. 472 MDA 2014 dated July |
| POLICE | : | 21, 2015 Reversing the Order of the |
| | : | Cumberland County Court of Common |
| | : | Pleas, Civil Division, at No. 12-665 |
| | : | dated February 24, 2014 |
| | : | |
| | : | ARGUED:  September 14, 2016 |


**OPINION**


**JUSTICE DONOHUE**                              **DECIDED:  January 19, 2017**

Before this Court, on discretionary review, is the appeal of the Pennsylvania

State Police ("PSP") from the decision of the Superior Court holding that section

6111.1(g)(2) of the Uniform Firearms Act, which provides for review by a court of

common pleas of a request for the expungement of the PSP's records of an individual's

involuntary civil commitment under section 7302 ("302") of the Mental Health

Procedures Act ("MHPA"), requires a de novo hearing at which clear and convincing

evidence must be presented in support of the 302 commitment.[1]  We conclude that the

---

[1]  A de novo hearing permits a trial court to consider the case anew.  Bowling v. Office of Open Records, 75 A.3d 453, 482 n.14 (Pa. 2013).  The clear and convincing evidence standard is the highest standard of proof utilized in civil proceedings, requiring "evidence that is so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue."  Commonwealth v. Maldonado, 838 A.2d 710, 715 (Pa. 2003) (alterations in the original; internal quotation marks and citation omitted).

Superior Court erred, as the plain language of section 6111.1(g)(2) requires a court of common pleas to review only the sufficiency of the evidence to support the 302 commitment, limited to the information available to the physician at the time he or she made the decision to commit the individual, viewed in the light most favorable to the physician as the original decision-maker to determine whether his or her findings are supported by a preponderance of the evidence. Because the Superior Court reviewed the trial court's decision through an improper lens, we vacate its decision and remand to that court for proceedings consistent with this Opinion.

Pursuant to the MHPA, a person for whom there are "reasonable grounds to believe" that he or she is "severely mentally disabled and in need of immediate treatment" may be subjected to an involuntary examination by a physician. 50 P.S. § 7302(a). When an individual is brought in for an examination and determination of his or her need for emergency mental health treatment, the physician must determine, within two hours of the individual's arrival, whether the person is in fact "severely mentally disabled" and "in need of immediate treatment." 50 P.S. § 7302(b).

An individual is "severely mentally disabled" if "as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself." 50 P.S. § 7301(a). What constitutes a "clear and present danger" is also defined by statute:

> (1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated. If, however, the person has been found incompetent to be tried or has been acquitted by reason of

lack of criminal responsibility on charges arising from conduct involving infliction of or attempt to inflict substantial bodily harm on another, such 30-day limitation shall not apply so long as an application for examination and treatment is filed within 30 days after the date of such determination or verdict. In such case, a clear and present danger to others may be shown by establishing that the conduct charged in the criminal proceeding did occur, and that there is a reasonable probability that such conduct will be repeated. For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.

(2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:

(i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act; or

(ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide; or

(iii) the person has substantially mutilated himself or attempted to mutilate himself substantially and that there is the reasonable probability of mutilation unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger shall be established by proof that the person has made threats to commit mutilation and has committed acts which are in furtherance of the threat to commit mutilation.

50 P.S. § 7301(b).  If the examining physician determines that the person is "severely mentally disabled and in need of immediate treatment, treatment shall be begun immediately" and continue until "there is no longer a need for immediate treatment," up to 120 hours.  50 P.S. § 7302(b), (d).

The Uniform Firearms Act prohibits a person who has been involuntarily committed for psychiatric treatment under section 302 from possessing, using, controlling, selling, transferring, manufacturing or obtaining a license to possess a firearm.  18 Pa.C.S.A. § 6105(c)(4).  Section 6111.1(g)(2) provides one avenue to lift the firearm restrictions that result from a 302 commitment.  It states:

> A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged. A petition filed under this subsection shall toll the 60-day period set forth under section 6105(a)(2).[2]

18 Pa.C.S.A. § 6111.1(g)(2) (footnote added; footnote citing section 302 omitted).

With this legal background in mind, we turn to the facts of the case at bar.  The record reflects that on April 1, 2003, Nancy White Vencil ("Vencil") appeared at the

---

[2]  Section 6105(a)(2) provides, in relevant part:

> A person who is prohibited from possessing, using, controlling, selling, transferring or manufacturing a firearm under paragraph (1) or subsection (b) or (c) shall have a reasonable period of time, not to exceed 60 days from the date of the imposition of the disability under this subsection, in which to sell or transfer that person's firearms to another eligible person who is not a member of the prohibited person's household.

18 Pa.C.S.A. § 6105(a)(2)(i).

emergency room of Holy Spirit Hospital seeking medical treatment for physical ailments -- including pulmonary problems, burning eyes and swollen nostrils -- that she stated were caused by her exposure to chemical smells.[3]  History and Physical Examination, 04/02/2003, at 1.  She was observed to be crying throughout her interaction with hospital staff and requested that they test her saliva for chemicals.  Id.

Vencil reported that she developed a medical condition in July 2002 after being near Turtle Wax.  Id.  Thereafter, she began to live in hotels, as the new carpet and vinyl in the home she shared with her husband aggravated her symptoms.  Id.  She reported moving repeatedly from one hotel to another to escape chemical smells, as well as an inability to eat or drink anything that was in plastic.  Id.

David Diehl, a crisis intervention worker at the hospital, met with Vencil in the emergency room.  During her interaction with Mr. Diehl, she reportedly disclosed having suicidal ideations because of her condition.  Id.  Vencil initially agreed to voluntarily seek inpatient mental health treatment but changed her mind prior to signing the paperwork.  Id.  She subsequently fled the hospital "in an emotionally distraught state, and drove in an erratic and dangerous fashion with her headlamps off … at risk for striking another motor vehicle, causing a traffic accident."  Id.

Based upon his observations and Vencil's expression of suicidal thoughts, Mr. Diehl believed that Vencil was "severely mentally disabled" in that she posed a "clear and present danger" to herself as defined by section 7301(b)(2)(ii) ("301").  Application

---

[3]  We confine our statement of the case to the facts and findings as recorded by the physician who evaluated Vencil pursuant to section 302(b).  As we explain in greater detail later in this Opinion, any other evidence or information is irrelevant for purposes of a section 6111.1(g)(2) review.

for Involuntary Emergency Mental Health Examination and Treatment at 1, 3. He therefore filed an application pursuant to section 302(a) of the MHPA for Vencil to undergo an involuntary psychiatric examination by a physician, which the mental health delegate granted. Id. at 1-4; History and Physical Examination, 04/02/2003, at 1; *see also* 50 P.S. § 7302(a) (setting forth the procedure for applying for involuntary emergency psychiatric examination). Vencil's friend and sister both reportedly expressed concern to Mr. Diehl, stating that Vencil "was mentally unstable and should be hospitalized." History and Physical Examination, 04/02/2003, at 1. Police located Vencil and brought her back to the hospital for the section 302(b) evaluation the following afternoon. Id.

Dr. David Petkash examined Vencil pursuant to section 302(b) of the MHPA, during which Vencil denied having suicidal thoughts. Id. at 2. He observed her to have poor eye contact and to be uncooperative during the examination. Id. She was also "extremely anxious and dysphoric," with "some psychomotor agitation present." Id.

Vencil informed Dr. Petkash that her medical care for her environmental sensitivities was coordinated through her family practitioner, Dr. Sullivan, and that she "may have seen" additional, unnamed medical providers "who may be in the Philadelphia area." Id. at 1. Dr. Petkash nonetheless regarded Vencil's insight and judgment into her condition as "impaired," finding her to be delusional that she has sensitivities to environmental agents. Id. at 2.

Dr. Petkash's provisional Axis I diagnoses included delusional disorder, somatic; depressive disorder, not otherwise specified; and rule out diagnoses of major depression, severe, with psychotic features; somatoform disorder; schizophreniform

disorder; and bipolar disorder. Id. at 3. Based upon his examination and the information available to him, Dr. Petkash concluded that Vencil was "severely mentally disabled and in need of treatment" for a period not to exceed 120 hours. Application for Involuntary Emergency Mental Health Examination and Treatment at 7.

Nearly nine years later, on February 3, 2012, Vencil filed a request for expungement of the records of her 302 commitment in the Cumberland County Court of Common Pleas.[4] She named the PSP and Holy Spirit Hospital ("Holy Spirit") as respondents.[5] The trial court held a hearing on January 17, 2014. Vencil presented her testimony and that of her husband; documentation from Drs. John M. Sullivan and Harold E. Buttram (which she had provided to Holy Spirit after the 302 commitment decision was made) indicating that at the time of her commitment, she was being medically treated for environmental sensitivities resulting from her exposure to Turtle Wax; and a report from Dr. Kenneth J. Rubin who, following his review of the entirety of Vencil's Holy Spirit records (beginning with an unrelated emergency room visit in 2002

---

[4] Although almost a decade had passed between Vencil's 302 commitment and her request for expungement, the PSP affirmatively waived consideration of the applicable statute of limitations on actions commenced under section 6111.1(g)(2). See PSP's Brief at 27 n.11.

[5] Vencil named Holy Spirit as a respondent because she requested that the trial court expunge the hospital's records of her 302 commitment in addition to the records held by the PSP. See N.T., 01/17/2014, at 17; Petition to Expunge Mental Health Notification Records, 02/03/2012, at 5. Holy Spirit's participation in these proceedings has not been challenged. We note, however, that section 6111.1(g)(2) pertains only to expungement of the PSP's records of an individual's 302 commitment. In the event of a finding that the evidence was insufficient to support the commitment, then the 302 commitment was unlawful, and destruction of the hospital record of the commitment is mandatory. See Wolfe v. Beal, 384 A.2d 1187, 1189 (Pa. 1978) (holding that "a person who has been unlawfully committed to a state mental hospital has a right to the destruction of the hospital records which were created as a result of the illegal commitment").

and ending with documentation of her discharge from the 302 commitment in question on April 3, 2003), concluded that the 302 commitment was improper. Holy Spirit introduced into evidence Vencil's Holy Spirit records, which included Dr. Petkash's evaluation and findings under section 302(b). Mr. Diehl testified for the PSP as to his recollection of the events that preceded his request for Vencil's emergency psychiatric examination more than a decade before.

Following the submission of post-hearing briefs by the parties, the trial court found, "based upon the testimony [and] a thorough review of the medical records[,] … there was clear and convincing evidence to support [Vencil]'s 302 commitment." Trial Court Opinion, 07/18/2014, at 6-7. Specifically, the trial court found that Vencil's "articulated desire to kill herself," made to Mr. Diehl, combined with her actions thereafter of fleeing the hospital and driving her car erratically, sufficiently showed that she was a "clear and present danger" to herself, thus requiring emergency psychiatric hospitalization. Id. at 7; see 50 P.S. § 7301(b)(2)(ii). Based upon the evidence Vencil presented at the hearing, the trial court agreed that Dr. Petkash's "delusional diagnosis was erroneous." Trial Court Opinion, 07/18/2014, at 7-8. It disagreed, however, that this rendered her 302 commitment inappropriate: "While the symptoms of her environmental illness may very well have been real, so were the side effects of battling those symptoms. She was depressed, felt hopeless, and articulated a desire to commit suicide. Those side effects coupled with her actions justified the 302 commitment." Id. at 8.

Vencil appealed the trial court's decision to the Superior Court, raising a single issue for review: "Whether the clear and present danger standard is satisfied under 50

P.S. § 7301: [sic] when an individual does not make a specific active threat of suicide (rather a vague reference to suicidal thoughts in the past tense) and does not take any actions in furtherance of a specific threat?" In re Vencil, 120 A.3d 1028, 1032 (Pa. Super. 2015) (quoting Vencil's Superior Court Brief at 4). The Superior Court reversed the trial court's decision, holding that although the trial court properly held a de novo hearing and utilized a clear and convincing evidentiary standard, it erroneously concluded that the evidence presented clearly and convincingly supported Vencil's 302 commitment. Id. at 1041.

We granted the PSP's request for allowance of appeal to answer the following two questions:

> (1) Did the Superior Court err when it held that the standard of proof to be employed by the trial court in a sufficiency review hearing for a Section 302 involuntary commitment is clear and convincing evidence in light of the existing case law, and the exigent nature of Section 302 commitments?
>
> (2) Did the Superior Court err when it held that a petitioner who challenges the sufficiency of the evidence of a Section 302 involuntary commitment was entitled to a de novo review by the trial court pursuant to 18 Pa.C.S. § 6111.1(g)(2)?

In re Vencil, 128 A.3d 1183 (Pa. 2015) (per curiam).[6] These issues present pure questions of law, over which our standard of review is de novo and our scope of review

---

[6] Vencil claims that the PSP waived these arguments by failing to raise them before either the trial court or the Superior Court. Our review of the record contradicts this assertion. The PSP, through its adoption of Holy Spirit's appellate brief, raised these precise arguments before the Superior Court. *See* Holy Spirit's Superior Court Brief at 8 (challenging the standard of proof required for an expungement request filed under section 6111.1(g)(2) and arguing that "[s]ubsequent information is … not relevant in determining the appropriateness of the 302 [o]rder"); *see also* Pa.R.A.P. 2137 (permitting an appellant or appellee in a multiparty case to "join in a single brief"). (continued…)

is plenary. *See* Commonwealth v. Giulian, 141 A.3d 1262, 1266 (Pa. 2016); In re Berlant, 328 A.2d 471, 473 (Pa. 1974). Because the questions are interrelated, we consider them together.

In reaching its decision that section 6111.1(g)(2) requires a de novo hearing at which clear and convincing evidence to support the 302 commitment must be presented, the Superior Court began with the conclusion that the statute was "not explicit" regarding the standard of proof required and the "review procedure to be followed[.]" In re Vencil, 120 A.3d at 1034-35, 1036. Finding the statute to be ambiguous, the Superior Court thus went on to "consider a variety of factors to ascertain the legislative intent." Id. at 1035 (citing In re T.B., 113 A.3d 1273, 1276 (Pa. Super. 2015)); *see also* 1 Pa.C.S.A. § 1921(a)-(c) (providing that the object of statutory interpretation is to determine and apply the intent of the General Assembly; only where the statute is ambiguous are we to consider anything other than the plain language of the statute to determine legislative intent).

Because the MHPA does not provide for judicial review of a 302 commitment, the Superior Court found, based upon statutory and case law concerning involuntary civil commitments pursuant to section 7303 of the MHPA ("303"), "that at a minimum the de novo hearing afforded within [section 303 of] the MHPA is required for section

---

(…continued)
Further, because the PSP was the non-moving party before the trial court and was an appellee in the Superior Court, it was not required to preserve these arguments before the trial court. *See* Commonwealth v. Katze, 658 A.2d 345, 349 (Pa. 1995) (opinion divided on other grounds) (stating that where the verdict winner is the non-moving party before the trial court, that party has no obligation to preserve issue for appeal); *see also* Commonwealth v. McMullen, 961 A.2d 842, 847 (Pa. 2008); Sullivan v. Com., Dep't of Transp., Bureau of Driver Licensing, 708 A.2d 481, 483 (Pa. 1998). We therefore proceed to review the merits of the issues raised.

6111.1(g)(2)," at which clear and convincing evidence must be presented to support the commitment. In re Vencil, 120 A.3d at 1035, 1037 (citing In re T.J., 739 A.2d 478, 480 n.1 (Pa. 1999); In re Involuntary Commitment of Barbour, 733 A.2d 1286, 1288 (Pa. Super. 1999); In re Hancock, 719 A.2d 1053, 1055-57 (Pa. Super. 1998); 50 P.S. § 7109)); *see also* 50 P.S. § 7303. The Superior Court further concluded that because "there is no record for the trial court to review," a section 6111.1(g)(2) review is not limited to the information known by the physician at the time of the 302 commitment. Id. at 1035-36.

At the outset, we respectfully disagree that the statute is not explicit and that there is any ambiguity in the terms of section 6111.1(g)(2). Section 6111.1(g)(2) requires judicial review of "the sufficiency of the evidence **upon which the commitment was based**." 18 Pa.C.S.A. § 6111.1(g)(2) (emphasis added). "[T]he evidence upon which the commitment was based" is the information contained in the physician's record of the examination of the individual and the resultant findings. *See* 50 P.S. § 7302(b) (requiring the physician to make a record of the examination and his or her findings).[7] Therefore, the plain language of section 6111.1(g)(2) directs a trial

---

[7] It is important to note that section 6111.1(g)(2) applies only to a person who has been "involuntarily committed pursuant to section 302 of the [MHPA]," i.e., an individual who a physician determined was "severely mentally disabled and in need of emergency treatment." The firearms limitations of section 6105(a) are inapplicable unless the individual was subjected to a 302 commitment. The law requires the automatic expungement of any record of an involuntary examination if the person was not committed under section 302, without the need for the filing of an expungement request. *See* 18 Pa.C.S.A. §§ 6105(c)(4), 6111.1(g)(3). Therefore, contrary to Vencil's argument, a section 6111.1(g)(2) review is not of the "novice social worker's" request for an examination of an individual. It is a review of the sufficiency of the evidence supporting the physician's decision to involuntarily commit the individual for up to 120 hours of emergency mental health treatment.

court to review the physician's findings, made at the time of the commitment, to determine whether the evidence known by the physician at the time, as contained in the contemporaneously-created record, supports the conclusion that the individual required commitment under one (or more) of the specific, statutorily-defined circumstances. *See* 50 P.S. § 7301.

Furthermore, the phrase "sufficiency of the evidence" is a term of art that has a precise meaning. *See* Commonwealth v. Hicks, 74 A.2d 178, 178 (Pa. 1950) ("[I]t is axiomatic that words having a precise and well-settled legal meaning must be given that meaning when they appear in statutes unless there is a clear expression of legislative intent to the contrary."); *see also generally* Morissette v. United States, 342 U.S. 246, 263 (1952) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."). In other legal contexts, both state and federal, a challenge to the sufficiency of the evidence presents a pure question of law, requiring review of the facts of record in the light most favorable to the original decision-maker or prevailing party (if applicable) to determine whether the requisite standard of proof has been met. *See, e.g.,* Musacchio v. United States, 136 S.Ct. 709, 715 (2016) (stating that for a federal criminal conviction, it is a question of whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to support each element of the crime beyond a reasonable doubt); Jackson v. Virginia, 443 U.S. 307, 319 (1979) (same for habeas corpus review of a state conviction); Commonwealth v. Woodard, 129 A.3d 480,

489-90 (Pa. 2015) (same for a state criminal conviction); In re Johnson, 284 A.2d 780, 781 (Pa. 1971) (same for an adjudication of delinquency); Samuel-Bassett v. Kia Motors Am., Inc., 34 A.3d 1, 34 (Pa. 2011) (providing that for a civil action, a reviewing court must examine the record in the light most favorable to the verdict winner to determine "whether the evidence was sufficient to enable the factfinder to find that all the elements of the causes of action were established by a preponderance of the evidence"); Office of Disciplinary Counsel v. DiAngelus, 907 A.2d 452, 456 (Pa. 2006) (explaining that sufficiency of the evidence for attorney discipline matters are reviewed with "substantial deference" to the findings of the Hearing Committee and the Disciplinary Board to determine whether unprofessional conduct was proven to meet the evidentiary standard). This has been the definition of a court's review of the sufficiency of the evidence for more than a century. *See, e.g.,* Miller v. Baschore, 83 Pa. 356, 358 (1877) (reviewing the evidence "in the light most favorable to the plaintiff" to determine the sufficiency of the evidence to support the trial court's conclusion that the statute of limitations on the plaintiff's action had not yet expired).

Deference to the facts as found by the original factfinder is of particular importance in circumstances where the factfinders have specialized training or knowledge that makes them uniquely qualified to reach the findings and conclusions the General Assembly has entrusted them to make.

> A reviewing Court is always hesitant to upset the factual findings of a jury or even of a judge sitting without a jury because of the difficulty of ascertaining from the bare words of the record the nuances that might well overturn any credit that might be given to the spoken word. Such is particularly true in the review of findings of administrative tribunals, where the law has entrusted the ascertainment of the facts to persons presumably selected for their experience and

> expertise who are … better qualified than any Court to make a factual finding on a subject within their field.

St. Joseph's Hosp. v. Pa. Labor Relations Bd., 373 A.2d 1069, 1071 (Pa. 1977) (quoting Pa. Labor Relations Bd. v. Butz, 192 A.2d 707, 715 (Pa. 1963)).

"[W]e must accept that when the General Assembly selects words to use in a statute, it has chosen them purposefully." Commonwealth v. Scolieri, 813 A.2d 672, 673 (Pa. 2002) (citing 1 Pa.C.S.A. § 1921(b)). The Legislature could have broadly created an appeals process under the MHPA for 302 commitments, but it did not; it could have required a de novo hearing under section 6111.1(g)(2), but it did not. Instead, it narrowly provided that under 6111.1(g)(2) of the Uniform Firearms Act, a petitioner is entitled only to have a trial court "review the sufficiency of the evidence upon which the commitment was based." 18 Pa.C.S.A. § 6111.1(g)(2).

Even if the Superior Court's finding of ambiguity in section 6111.1(g)(2) was supportable, its determination that a de novo hearing is consistent with the intention of the General Assembly is not. In determining legislative intent, "[s]ections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute." Bd. of Revision of Taxes, City of Phila. v. City of Phila., 4 A.3d 610, 622 (Pa. 2010) (quoting Housing Auth. of Cty. of Chester v. Pa. State Civil Serv. Comm'n, 730 A.2d 935, 945 (Pa. 1999)).

> [W]here the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded. … [W]here a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent.

Fletcher v. Pennsylvania Prop. & Cas. Ins. Guar. Ass'n, 985 A.2d 678, 684 (Pa. 2009) (internal citations omitted).

Section 6111.1(e)(3) of the Uniform Firearms Act expressly provides for a de novo hearing before the Attorney General following the denial by the PSP of a challenge to the accuracy of a person's criminal, juvenile, or mental health record. 18 Pa.C.S.A. § 6111.1(e)(3). Subsection (g)(2) of the same statute, however, does not include any mention of a right to a de novo hearing before a court of common pleas for a review of the sufficiency of the evidence to support a 302 commitment. *See* 18 Pa.C.S.A. § 6111.1(g)(2). Therefore, adhering to the principles of statutory construction, a court cannot interject the right to a de novo hearing into section 6111.1(g)(2).

Furthermore, the Superior Court's reliance upon law related to 303 commitments is misplaced in this context. A 303 commitment extends a 302 commitment beyond 120 hours, up to 20 days. 50 P.S. § 7303(a), (h). Unlike a 302 commitment, which does not call for any review procedure, a 303 commitment requires the mental health facility to file an application with the court of common pleas stating the grounds relied upon to extend the individual's emergency treatment (50 P.S. § 7303(a)), a hearing and approval of the request for the extended involuntary commitment by a judge or mental health review officer in the first instance (50 P.S. § 7303(b)), and calls for de novo review in a court of common pleas of a decision by a mental health review officer (50 P.S. § 7303(g)).

The Superior Court's conclusion that the absence of a "record" necessitates a "full de novo hearing" under section 6111.1(g)(2) is also erroneous. In re Vencil, 120 A.3d at 1035. Although the court is correct that there is no **judicial** record of the 302

decision for the trial court to review, there is the physician's record of his or her examination and findings that the individual required emergency mental health treatment, which, as stated, is the only record information that is pertinent for a sufficiency review pursuant to section 6111.1(g)(2).  *See* 50 P.S. § 7302(b).

The Superior Court wholly misinterpreted the function of section 6111.1(g)(2). Section 6111.1(g)(2) does not, as the Superior Court suggests, authorize a trial court to "redecide[] the case," operating as a "substitute[]" for the physician who originally decided the 302 commitment was medically necessary.  In re Vencil, 120 A.3d at 1036 (citing Capuano v. Capuano, 823 A.2d 995, 1002-03 (Pa. Super. 2003)).  By legislative design, there is no judicial involvement in the decision to effectuate a 302 commitment and no right to appeal the physician's decision, and section 6111.1(g)(2) does not create a right to judicial intervention into a 302 commitment decision.  *But see* 50 P.S. § 7113 (providing for the availability of legal and equitable remedies and relief for all persons in treatment under the MHPA, "including challenges to the legality of detention or degree of restraint").

Vencil likewise misconstrues the nature of a section 6111.1(g)(2) review.  Relying on Addington v. Texas, 441 U.S. 418, 430 (1979),[8] she contends that a de novo hearing applying a clear and convincing evidentiary standard is required, based upon her belief that the trial court must "evaluate the proclivity of an individual for imminent

---

[8]  The question before the Court in Addington was "what standard of proof is required by the Fourteenth Amendment to the Constitution in a civil proceeding brought under state law to commit an individual involuntarily for an indefinite period to a state mental hospital."  Addington, 441 U.S. at 419-20.  The Court concluded that under the circumstances, due process required at least a clear and convincing evidentiary standard of proof.  Id. at 432-33.

dangerousness," and review the constitutionality of the "deprivation of the fundamental right of liberty" that accompanies a 302 commitment. *See* Vencil's Brief at 31-32. Contrary to Vencil's position, however, and unlike the proceeding at issue in Addington, a section 6111.1(g)(2) review is not a direct appeal from a 302 commitment and the interest at stake under 6111.1(g)(2) is not one's right to liberty. The infringement upon Vencil's liberty occurred when she was involuntarily committed pursuant to section 302 of the MHPA. By the time a section 6111.1(g)(2) petition is filed, the liberty deprivation has ended. A sufficiency review pursuant to section 6111.1(g)(2) of the Uniform Firearms Act is merely a mechanism to expunge the PSP's record of an individual's 302 commitment to remove this barrier to his or her possession and control of firearms.[9]

This conclusion is supported by the legislative history of Senate Bill 282, which included section 6111.1(g)(2). On the day of the final vote by the Pennsylvania House of Representatives before the bill was signed into law, immediately before the vote was taken, Representative William R. Lloyd, Jr., explained, in relevant part: "What we have done is to … say that … you have the right to challenge your original commitment on the grounds that there was not sufficient evidence for that commitment, and if you can demonstrate that there was not sufficient evidence, you then have the [firearms] disqualification removed." Pa. L. Journal, 179th Gen. Assemb. No. 78, Reg. Sess., 2234 (1995). This interpretation of legislative intent is further supported by the General

---

[9] The other due process argument presented in Vencil's brief -- that the "social stigma" associated with an involuntary civil commitment requires a de novo hearing and a clear and convincing evidentiary standard -- is woefully underdeveloped and suffers from the same misunderstanding of the nature of a proceeding under section 6111.1(g)(2). *See* Vencil's Brief at 29 & n.19, 33. She includes no statement of how, if at all, her reputation will be harmed by the PSP maintaining its record of her 302 commitment.

Assembly's placement of this sufficiency review provision in the Uniform Firearms Act and not in the MHPA. *See* 1 Pa.C.S.A. § 1924 (stating that although not controlling, the headings of the title or subchapter of the statute may be used when interpreting the statute).

As previously discussed, no liberty interest is at stake in a section 6111.1(g)(2) review. Moreover, Vencil has not challenged the due process protections provided by section 302 of the MHPA. Nor has she raised a due process argument in connection with her right to bear arms under the United States and/or Pennsylvania Constitutions.[10] Consequently, her argument (and the lower courts' determinations) that a clear and convincing evidentiary standard applies to the physician's recorded findings is incorrect. Instead, we conclude that the appropriate standard of proof applicable to the physician's record findings is a preponderance of the evidence standard, which is generally applicable to civil matters and has been classified as "a more likely than not inquiry," supported by the greater weight of the evidence; something a reasonable person would accept as sufficient to support a decision. Samuel-Bassett, 34 A.3d at 35; J.S. v. Com., Dep't. of Pub. Welfare, 596 A.2d 1114, 1115 (Pa. 1991).[11]

Because there is a longstanding meaning of what a sufficiency review entails, we conclude that our Legislature intended that definition, as commonly understood, when it chose to provide for a review of the sufficiency of the evidence to support a 302

---

[10] We observe that even if the record of her 302 commitment is not expunged, section 6105(f)(1) of the Uniform Firearms Act provides another mechanism for her to obtain reinstatement of her firearms rights, requiring only that the trial court find that she can possess a firearm without risk of harm to herself or another. 18 Pa.C.S.A. § 6105(f)(1).

[11] *See* Commonwealth v. Moto, 23 A.3d 989, 997 (Pa. 2011) (indicating that an expungement proceeding is civil in nature).

commitment under section 6111.1(g)(2). As such, under section 6111.1(g)(2), a challenge to the sufficiency of the evidence to support a 302 commitment presents a pure question of law, and the court's sole concern is whether, based on the findings recorded by the physician and the information he or she relied upon in arriving at those findings, the precise, legislatively-defined prerequisites for a 302 commitment have been satisfied and are supported by a preponderance of the evidence. We emphasize that the trial court's review is limited to the findings recorded by the physician and the information he or she relied upon in arriving at those findings, and requires deference to the physician, as the original factfinder, as the physician examined and evaluated the individual in the first instance, was able to observe his or her demeanor, and has particularized training, knowledge and experience regarding whether a 302 commitment is medically necessary.

The question of whether Dr. Petkash's decision to involuntarily commit Vencil pursuant to 302 of the MHPA pursuant to this newly announced standard for a section 6111.1(g)(2) review is beyond the scope of our allocatur grant. We therefore vacate the decision of the Superior Court and remand the matter to that court for proceedings consistent with this Opinion.

Chief Justice Saylor and Justices Baer, Todd, Dougherty and Wecht join the opinion.

Justice Mundy did not participate in the consideration or decision of this case.