J-S01023-21

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TODD RAE TARSELLI | : | |
| | : | |
| Appellant | : | No. 360 MDA 2020 |

Appeal from the Order Entered February 3, 2020
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-MD-0000295-1992

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED: JULY 7, 2021**

Todd Rae Tarselli (Appellant) appeals from dismissal of his petition brought under the Post Conviction Relief Act (PCRA).[1]  We affirm in part, vacate in part, and remand.

As detailed *infra*, he filed an initial, untimely petition, which was denied, and on May 14, 2014, this Court affirmed its denial.  ***See Commonwealth v. Tarselli***, 1339 MDA 2013, at 12 (Pa. Super. May 14, 2014) ("Based on the foregoing, we conclude the PCRA court properly dismissed Appellant's PCRA petition as untimely.").  In his prior petition, he attempted to assert a claim pursuant to ***Miller v. Alabama***, 567 U.S. 460 (2012); ***see id.*** at 7.  In ***Miller***,

_____

[*] Former Justice specially assigned to the Superior Court.  President Judge Emeritus Stevens did not participate in the consideration or decision of this case.

[1] 42 Pa.C.S. §§ 9541-9546.

the Supreme Court held that the Eighth Amendment forbids a **mandatory** life sentence without the possibility of parole for a child. *Miller*, 567 U.S. at 479 ("We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.").

> The trial court offered the following summary:
>
> On November 5, 1992, [Appellant] entered a guilty plea to the charges filed against him. The trial court initially sentenced [Appellant] to consecutive terms of [mandatory] life imprisonment [without parole, for first degree murder], ten (10) to twenty (20) years imprisonment and a fine of $25,000 on the robbery charge, and two and one-half (2-½) to five (5) years imprisonment and a fine of $10,000 on the prohibited offensive weapons charge. On direct appeal, the Superior Court of Pennsylvania vacated the sentences imposed and remanded for resentencing, based on the sentencing court's failure to inquire into [Appellant]'s ability to pay the fines imposed and to state the sentencing guideline factors which it considered in fashioning sentence. Thereafter, on September 22, 1993, the sentencing court resentenced [Appellant] to consecutive terms of life imprisonment for the homicide, [and] ten (10) to twenty (20) years' imprisonment on the prohibited offensive weapons charge, but imposed no fines.
>
> A second appeal to the Superior Court was filed by [Appellant], and on September 19, 1994, the judgment of sentence was affirmed. A petition for Allowance of Appeal filed to the Supreme Court of Pennsylvania was denied on April 24, 1995.

PCRA Ct. Op., 6/24/13, at 1-2. He filed the present petition on February 16, 2016.

The offense for which Appellant pled guilty occurred on January 24, 1992. The gravamen of Appellant's claim is that he is adopted, he was listed as a "foundling" at the Korean orphanage from which he was adopted, and his estimated birthdate of November 14, 1973 was ascertained by asking him, on

the day he was admitted to the orphanage, how old he was, and upon his response of "six years old," subtracting six years and then assigning him a presumptive date of birth. Appellant's Brief at 7-8. If this assigned birth date is correct, then Appellant was 18 years, two months, and nine days of age when the crime occurred.[2] If it is approximately one year prior to his actual birth (as detailed below), then he was under the age of 18 at the time of the underlying crime.

As his prior PCRA petition was untimely and he has not been resentenced in the meantime, his current petition must also be untimely. Indeed, his sentence was imposed in 1992, and has long been final. *See* 42 Pa.C.S. § 9545(b)(3). Therefore, he must meet one of the time-bar exceptions outlined at 42 Pa.C.S. § 9545(b)(1). Appellant's prior PCRA challenge, examined in *Commonwealth v. Tarselli*, 1339 MDA 2013, at 12 (Pa. Super. May 14, 2014), was levied before the Supreme Court issued *Montgomery v. Louisiana*, 136 S.Ct. 718, 725 (2016), *as revised* (Jan. 27, 2016), in which it held that *Miller* was retroactive in application. "Appellant has not cited any authority for the proposition that *Miller* has been applied retroactively by our Supreme Court, as the text of the PCRA requires him to do." *Tarselli*, 1339 MDA 2013, at 10-11.

_____

[2] We note that Appellant has attempted to amend his birth certificate; this Court affirmed denial of his petition to amend his birth year, changing it from 1973 to 1974. *In re: Tarselli*, 930 MDA 2016 (Pa. Super. Feb. 17, 2017). This Court concluded that Appellant had failed to join an indispensable party, the State Department of Health. *Id.* at 3-4.

- 3 -

Appellant focuses his argument almost exclusively on establishing his age as under 18 at the time of the underlying offense, asserting simply that the PCRA court's conclusion as to the time bar "is in error." Appellant's Brief at 18. However, this Court must determine whether we have the power to act before we consider the merits of Appellant's argument.

Under **Commonwealth v. Peterkin**, 722 A.2d 638 (Pa. 1998), we may not grant relief under the PCRA unless Appellant has established an exception to the time bar. Appellant relies on the exception outlined at 42 Pa.C.S. § 9545(b)(1)(iii), as he filed the present petition very shortly after the decision in **Montgomery** was handed down. That exception provides that a petition is timely if filed within the allotted window after recognition of the right asserted by our Supreme Court or the Supreme Court of the United States where the right has been held by that court to apply retroactively. 42 Pa.C.S. § 9545(b)(1)(iii). We observe that Appellant has initiated federal *habeas* proceedings, and in **Tarselli v. Superintendent Greene SCI**, 726 Fed.Appx. 869 (3d Cir. March 23, 2018), the Third Circuit held that those proceedings should be stayed until such time as the present proceedings are completed. **See Tarselli**, 726 Fed. Appx. at 877.[3] In those proceedings, "the District Court found that [Appellant] has diligently pursued his claim in both state and federal court." **Id.**

---

[3] The Third Circuit reversed the District Court's dismissal (rather than stay) of Appellant's habeas petition, determining that Appellant had demonstrated good cause, a potentially meritorious claim, and a lack of dilatory tactics. **See id.** at 874-77.

The Commonwealth argues that because Appellant knew by 1998 that his recorded date of birth might be wrong, he has not been diligent and thus he cannot establish that he has met the exception to the time bar for new evidence. Commonwealth's Brief at 10. The trial court found that although Appellant knew about the age issue earlier, "there was no reason to raise the issue with regard to his sentence until *Miller* was held to apply retroactively." PCRA Ct. Op., 2/3/20, at 4 (unnumbered).

Appellant may have known for a long time that his recorded birth date was dubious, and the analysis is different as to claims relating to having been processed as and treated as an adult during the investigation and prosecution of this matter.[4] However, his knowledge regarding his date of birth did not become salient until *Montgomery* was filed, for the purposes of his *Miller* claim. We note that even his earlier petition seeking relief under *Miller* was filed fewer than sixty days after that decision was handed down, just as his present petition was filed fewer than sixty days after the Supreme Court filed its decision in *Montgomery*. We will not disturb or overlook a finding of

---

[4] Appellant pressed such claims in some of the filings made before the PCRA court, but has not established diligence with regard to those claims. He knew at the time of trial that he was adopted and that he was, even by his recorded date of birth, less than three months into his legal adulthood when the crime occurred. We cannot find that a petition claiming that he should have been treated and processed as a juvenile is timely filed decades after his plea. To the extent Appellant seeks such relief here, we affirm the PCRA court's denial of relief.

diligence by our federal colleagues without good cause.[5]  Thus, we conclude we have the power to hear Appellant's claim under **Miller** and **Montgomery**.

The Commonwealth established that it had no reason to believe that Appellant was younger than 18 at the time of the crime's commission.  PCRA Ct. Op., 2/3/20, at 6 (unnumbered).  For purposes of **Miller**/**Montgomery**, this is neither here nor there.  The Commonwealth asserts that Appellant, in attempting to establish his true age and thereby his eligibility for relief, offers only "speculation, guess work, and conjecture."  Commonwealth's Brief at 11.

Appellant submitted documentation, including an "Initial Social History" from the Eastern Child Welfare Society, documenting his health and demeanor as a foundling; it reports that his parents passed away during his early life, and includes details about his height, weight, and certain food and toy preferences.  **See** Appx. B, Appellant's Brief, "Initial Social History" at 1-3 (unpaginated).  He also submitted a letter from the Director of Post-Adoption Service Center at the Eastern Social Welfare Society, confirming the central features of the facts as he presents them: he was asked how old he was, he said he was six, and because of that answer, a certain date was recorded as his date of birth.  **See** Appx. C, Letter.  The letter also confirms that Korean norms for age determination differ from ours: "[w]hen a child states that he or she is six years old in Korea, [they] would be [five] years old in the U.S.A.

---

[5] The Third Circuit concluded that Appellant "cannot [be found] dilatory for failing to assert a right which he did not yet have [prior to **Montgomery**.]" **Tarselli**, 726 Fed. Appx. at 877.

. . . because [Appellant] stated to a social worker . . . that he was six years old, he must have actually been five years old." *Id.* At his PCRA hearing, he offered the testimony of Professor Eleana Kim as an expert in Korean culture. N.T. 8/6-7/19 at 10-27. Her testimony confirmed that while completeness of paperwork for Korea-to-America adoptions was important for Visa eligibility, accuracy was less important ("what social workers in Korea now say is that there was very little attention paid to the accuracy of the paperwork because the goal of the paperwork was just to move children."). *Id.* at 18. Professor Kim also confirmed that it was Korean custom at the time of Appellant's birth and youth to consider a newborn infant to be one year old. *Id.* at 19. Appellant testified as to his early memories, including of having walked with older children to school but not yet being old enough to attend himself. N.T. 8/6-7/19 at 53-54.

The PCRA court focuses on the fact that Appellant did not establish his actual date of birth at the hearing, and found that "[t]he only documentation submitted supports the conclusion that [Appellant] was eighteen years of age at the time of the homicide." PCRA Ct. Op., 2/3/20, at 7 (unpaginated). This would be true if the only operative question is, what is Appellant's exact date of birth? That is not the key inquiry; per **Miller** and **Montgomery**, the crux is whether Appellant established by a preponderance that he was under 18 when he committed this crime.[6] Is it more likely than not that when Appellant

---

[6] Per 42 Pa.C.S. § 9543(a), a preponderance of the evidence is the proper burden of proof to apply to PCRA petitioners.

told administrators at the orphanage that he was six years old, his understanding of what "six years old" meant was properly understood by applying Korean, rather than Western, standards for age determination?[7]

This is a close call, and because the preponderance standard applies, and close calls in this realm must go to the defendant rather than the state, we reverse. Appellant was very young when he reported his age as "six" and it is far more likely that he simply reported what he was told than that he had the wherewithal and presence of mind to apply cunning or guile while devising an answer to the age query. There seems to be no dispute that he was born in Korea to Korean parents. Thus, it seems more likely than not that his age would have been described to him during his early childhood in the prevailing terms of that cultural milieu, rather than in Western terms. Appellant established by a preponderance that, by Korean convention, a child is considered to be one year old at the time of birth. We have no quibble with the trial court's findings of fact; we reverse because as a matter of law, we do not see any burden under *Miller* to establish one's exact date of birth. Rather, informed by our evolving understanding of brain development and considering

_____

[7] The preponderance standard is commonly articulated as a determination of whether the purported fact is more likely than not. *See, e.g., In re Vencil*, 152 A.3d 235, 246 (Pa. 2017) ("preponderance of the evidence standard . . . is generally applicable to civil matters and has been classified as 'a more likely than not inquiry,' supported by the greater weight of the evidence; something a reasonable person would accept as sufficient to support a decision."). Thus: is it more likely than not that Appellant was under eighteen at the time of the underlying crime?

the "hallmark features" of children and teenagers – "immaturity, impetuosity, and failure to appreciate risks and consequences" – *Miller* draws a line, and if a PCRA petitioner establishes by a preponderance that they had not yet crossed that line at the time their crime occurred, then they should be resentenced. *Miller*, 567 U.S. at 477.

This scenario is unique and unlikely to recur, especially as technological advances improve our ability to record and store vital statistics. If Appellant had only established uncertainty as to his date of birth (and therefore his true age at the time of the crime), that would present a more difficult scenario. However, he established more than that; he showed that when he was a very young child of Korean parents, raised in Korea, he reported that he was six years old. He also established that the proper framework to understand that self-report is one that incorporates the Korean cultural norms in which he had been raised thus far, which credited him with a year of life pre-birth. *See* N.T. 8/6-7/19 at 19 ("a child is born, and the age of the child at birth is one years old. So, in other words, the nine months in the womb is kind of rounded up to one year.").[8]

Because Appellant established that it is more likely than not that differences in cultural norms regarding age caused him to be regarded as

_____

[8] Appellant's proffered testimony also established that by Korean custom at the time, everyone considered themselves one year older at the coming of the lunar new year, and thus a child who would in the United States be considered as young as four might be considered six by Korean norms at that time. *See* N.T. 8/6-7/19 at 19, 43.

approximately one year older than he actually was at the time of his adoption, and because he timely filed the present petition, we reverse and remand for resentencing consistent with the requirements of **Miller** and **Montgomery**.

Order vacated in part and affirmed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Lazarus joins this Memorandum.

President Judge Emeritus Stevens Did Not Participate in this Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/07/2021