J-S03033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.M. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 849 MDA 2023 |

Appeal from the Order Entered May 15, 2023
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2022 04414

BEFORE:  OLSON, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED: MARCH 5, 2024**

J.M. appeals from the order entered by the Luzerne County Court of Common Pleas ("trial court"), denying his petition to expunge the record of his involuntary commitment under the Mental Health Procedures Act ("MHPA").[1]  J.M. argues that the evidence was insufficient to support his 302 commitment, and there was a violation of his due process rights provided by the MHPA because he was not examined by a physician within two hours of his arrival at the facility as required by 50 P.S. § 7302(b).  Finding J.M.'s

---

[1] 50 P.S. §§ 7101-7503, Act of Jul. 9, 1976, P.L. 817, as amended.  The legislature enacted the MHPA to establish procedures "to assure the availability of adequate treatment to persons who are mentally ill."  50 P.S. § 7102.  Relevant herein, the MHPA governs involuntary emergency examination and treatment, also known as a "302 commitment."  *Id.* § 7302.

contentions to be unsupported by the record and/or the applicable law, we affirm.

In the months leading up to November 2020, J.M. engaged in various arguments with his neighbors. According to J.M., his neighbors threatened to burn down his home. On November 30, 2020, J.M. called his sister, A.J., to seek her help with his neighbors. During the call, J.M. told his sister that his neighbors were going to kill him; their father was racist and was helping the neighbors cover up their threats; and the police were in on the neighbors' plan. J.M. told A.J. that if she called the police or sent anyone else to his home, he would shoot them "on sight" with one of his guns.

A.J. filed an application for involuntary emergency examination and treatment ("MH–783 Form"),[2] indicating that J.M. was severely mentally disabled and a danger to others. A.J. also requested that "[t]he County Administrator issue[] a warrant authorizing a policeman or someone representing the County Administrator to take the patient to a facility for examination and treatment." MH–783 Form, 11/30/2020, Part I (Application). Edward Hayes, a crisis clinician, requested and obtained authorization for transportation of J.M. to an approved facility for his warrantless examination

---

[2] The Pennsylvania Department of Human Services issues the MH–783 form for use in connection with 302 commitments. *See* 55 Pa. Code § 5100.86(a) ("Written applications, warrants, and written statements made under section 302 of the [MHPA] (50 P.S. § 7302), shall be made on Form MH–783 issued by the Department.").

because he was an immediate danger. *Id.*, Part II (Authorization for Transportation to an Approved Facility for Examination Without a Warrant).

In the interim, J.M.'s father came to his house. J.M. asked his father to leave. Thereafter, J.M. called his father. A police officer answered his father's phone, at which point J.M. discovered a large police presence at his home. After speaking with the officer, J.M. willingly accompanied police to the emergency room at Wilkes-Barre General Hospital.

J.M. arrived at the hospital at 11:01 p.m. Adharsh Sahadevan, M.D. ("Dr. Sahadevan"), a physician, examined J.M. at 11:11 p.m. During the examination, J.M. told Dr. Sahadevan that his neighbors and his father were members of the Ku Klux Klan, his neighbors were trying to poison him, and that he would shoot anyone who came onto his property.

Based upon the information available to him, Dr. Sahadevan found that J.M. had poor insight and judgment and concluded that J.M. was severely mentally disabled and needed to be admitted into an inpatient psychiatric unit for treatment for a period not to exceed 120 hours. However, Dr. Sahadevan did not sign the MH–783 Form immediately because J.M. first requested a face-to-face meeting with a psychiatrist and one was not available to evaluate J.M. until the following morning at 9:30 a.m. Dr. Sahadevan ultimately signed the MH–783 Form at 10:00 a.m. on December 1, 2020, and J.M. was transferred to First Hospital in Kingston for treatment.

J.M. stayed at First Hospital for eight days, where he had counseling sessions every other day. First Hospital discharged J.M. with a diagnosis of persecutory delusions and unspecified psychosis, prescribing him medication that he took for two months following his release. Additionally, J.M. met with a counselor for six to eight months after his release. Thereafter, the counselor referred J.M. to licensed psychologist, Abby Russin, Ph.D. ("Dr. Russin"), for a mental health evaluation. On February 20, 2022, Dr. Russin issued a report in which she noted that J.M. originally thought his neighbors vandalized his home to harm him, but came to realize that the neighbors were just trying to annoy him. Dr. Russin further stated that J.M. was cooperative and had good judgment and insight.

On May 19, 2022, J.M. filed a counseled petition for the expungement of his 302 commitment and restoration of his firearm rights.[3] In the petition, J.M. sought expungement because the evidence was insufficient to support his 302 commitment. He further asserted a due process violation based upon the alleged failure of a physician to evaluate him within two hours of his arrival at the hospital as the law requires. The trial court held a hearing at which J.M. testified and the parties entered the MH−783 Form and Dr. Russin's report into evidence. The trial court denied J.M.'s request for expungement but

---

[3] Based upon his 302 commitment J.M. was prohibited from possessing a firearm. *See* 18 Pa.C.S. § 6105(c)(4).

- 4 -

granted his request for restoration of his firearm rights. J.M. filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement.

On appeal, J.M. raises the following questions for our review:

1. Whether insufficient evidence existed to support the involuntary commitment of J.M.?

2. Whether J.M.'s due process rights were violated, thus requiring the expungement of his involuntary commitment, when J.M. was not evaluated by a physician within two hours of his arrival at the hospital as required by 50 P.S. § 7302(b)?

J.M.'s Brief at 4.

"We review the trial court's denial of a motion for expunction for an abuse of its discretion." *In re J.G.F.*, 295 A.3d 265, 269 (Pa. Super. 2023) (citation omitted).

In his first claim, J.M. contends that the evidence was insufficient to support his involuntary commitment. J.M.'s Brief at 11, 15. J.M. argues that the alleged threats listed in the MH-783 Form did not target a specific person but were conditional statements to prevent his sister from sending anyone to his home. *Id.* at 13-14. J.M. asserts that if his sister had not done anything, he would not have been a threat to anyone; therefore, he reasons, the alleged threat was not likely to occur. *Id.* at 14. J.M. highlights that when provided the opportunity to carry out his threat to the police, he did not do so, and he instead voluntarily accompanied them to the hospital without brandishing a firearm or threatening anyone. *Id.* at 13, 14, 15. According to J.M., when a physician is determining whether a person is a danger to others, the law

requires consideration of what would occur without treatment, which in this case was nothing. *Id.* at 14-15.

The trial court found sufficient evidence existed to support J.M.'s 302 commitment. Trial Court Opinion, 8/14/2023, at 22. Specifically, the trial court observed that J.M. warned A.J. that he would shoot anyone she sent to his property "on sight." *Id.* at 21. Therefore, J.M. made a threat to "others" on November 30, 2020. *Id.* The trial court also found that J.M. committed an act in furtherance of his threat by articulating a specific plan to harm anyone who came onto his property, including police and neighbors. *Id.* at 21-22. The trial court gave deference to Dr. Sahadevan's findings and conclusion that J.M.'s threat was credible, was severely mentally disabled, and needed inpatient treatment. *Id.* at 22.

Pennsylvania law provides an avenue for a person involuntarily committed pursuant to section 302 of the MHPA to have a court conduct a limited review of the propriety of the commitment:

> A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged.

18 Pa.C.S. § 6111.1(g)(2); *see also In re Vencil*, 152 A.3d 235, 237 (Pa. 2017) ("The plain language of Section 6111.1(g)(2) requires a court of

common pleas to review only the sufficiency of the evidence to support the 302 commitment.").

> [U]nder section 6111.1(g)(2), a challenge to the sufficiency of the evidence to support a 302 commitment presents a pure question of law, and the court's sole concern is whether, based on the findings recorded by the physician and the information he or she relied upon in arriving at those findings, the precise, legislatively-defined prerequisites for a 302 commitment have been satisfied and are supported by a preponderance of the evidence. We emphasize that the trial court's review is limited to the findings recorded by the physician and the information he or she relied upon in arriving at those findings, and requires deference to the physician, as the original factfinder, as the physician examined and evaluated the individual in the first instance, was able to observe his or her demeanor, and has particularized training, knowledge and experience regarding whether a 302 commitment is medically necessary.

*In re B.W.*, 250 A.3d 1163, 1167 (Pa. 2021) (citation omitted). "Section 6111.1(g)(2) does not ... authorize a trial court to 'redecide the case,' operating as a 'substitute' for the physician who originally decided the 302 commitment was medically necessary." *In re Vencil*, 152 A.3d 235, 244 (Pa. 2017) (citations and brackets omitted). To that end, "given that we are reviewing a Section 6111.1(g)(2) expungement ruling, we are limited to considering the evidence the physician knew at the time of the 302 commitment." *In re B.W.*, 250 A.3d at 1170.

Pursuant to section 302 of the MHPA, "[a] person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of section 301(b) and in need of immediate treatment." 50 P.S. § 7302(b). If the

examining physician determines "that the person is severely mentally disabled and in need of emergency treatment, treatment shall be begun immediately" and may continue for up to "120 hours." *Id.* § 7302(b), (d). An individual is "severely mentally disabled" if "as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or himself." *Id.* § 7301(a). "[A] clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm." *Id.* § 7301(b)(1). "[T]he articulation of a specific plan to harm an identified target that is deemed credible by medical professionals is sufficient to prove an act in furtherance of the threat to commit harm." *B.W.*, 250 A.3d at 1175.

Here, in the MH–783 Form, A.J. stated that J.M. thought his neighbors were going to kill him and that their father was covering up this plan. MH–783 Form, Part I. A.J. indicated J.M. was yelling while making these statements. *Id.* When A.J. told J.M. to call the police, he refused, stating that the police were in on the plan with his neighbors. *Id.* J.M. told A.J. that if she called the police or sent anyone else to his house, he would "shoot them on sight." *Id.*, Part I, Addendum. A.J. noted that J.M. had multiple guns in his home. *Id.*

This information was available and presented to Dr. Sahadevan, the physician who conducted the emergency examination after J.M. came to the hospital. As mentioned above, Dr. Sahadevan found that J.M. had "poor insight and judgment." *Id.*, Part VI (Physician's Examination). Dr. Sahadevan stated that J.M. believed his neighbors and his father were members of the Ku Klux Klan[4] and that his neighbors were trying to "poison his home." *Id.* Dr. Sahadevan noted that J.M. said to him that he would shoot anyone who came onto his property. *Id.* Dr. Sahadevan concluded that that J.M. was "severely mentally disabled and in need of treatment. He should be admitted to a facility designated by the County Administrator for a period not to exceed 120 hours." *Id.*

We find no abuse of discretion in the trial court's conclusion that the preponderance of the evidence supports Dr. Sahadevan's determination that J.M. was severely mentally disabled and in need of involuntary commitment. *See In re B.W.*, 250 A.3d at 1170. J.M.'s plan was fully formed as it detailed the targets of the threat (his neighbors and police) and the manner of carrying out the threat (shooting them on sight if they came onto his property with one of the guns he had in his possession). *See* Trial Court Opinion, 8/14/2023, at 22 (giving "deference to Dr. Sahadevan's conclusion that J.M. was severely

---

[4] At the hearing on J.M.'s petition for expungement, J.M. testified that his neighbors had threatened to burn down his house if he brought a "person of color" into his home. N.T., 9/30/2023, at 8.

mentally disabled," and that Dr. Sahadevan found J.M.'s threats to be credible); *see also In re B.W.*, 250 A.3d at 1176 (concluding that "engaging in the planning process by conducting research or expressing a detailed plan constitute acts in furtherance of a threat under the MHPA").

The evidence in the contemporaneously created record at the time of the involuntary commitment was sufficient to demonstrate that J.M. was a clear and present danger to others. *See id.* at 1176-77 (concluding that an articulation of a specific plan to harm a coworker that is deemed credible by medical professionals is sufficient to prove acts in furtherance of threat to commit harm to another); *In re Woodside*, 699 A.2d 1293, 1296-97 (Pa. Super. 1997) (concluding that appellant's threat that he would get a scope and rifle and get rid of his estranged wife, combined with the purchase of a rifle scope from a sporting goods store on the day of his commitment, constituted an overt act in furtherance of the threat to harm his wife).

J.M. does not include any citation to relevant case law to support his argument that he had to specifically identify a police officer or any other person by name to meet the threats and acts formulation. *See* Pa.R.A.P. 2119(a) (noting that an argument must be supported by relevant citation to authority). The plain language of the statute does not require the identification of a specific person; instead, it clearly states that the person must pose "a clear and present danger of harm to **others**." 50 P.S. § 7301(a) (emphasis added); *see also id.* § 7301(b) (stating "a clear and present

danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm").

We further reject J.M.'s argument that his peaceful transfer to the hospital without shooting or attempting to shoot the police established that he did not commit acts in furtherance of the threat as required to establish that he is a "clear and present danger" of harming others. **See supra**, p.8. As we have previously recognized, "the plain language of the MHPA does not require an overt act in furtherance of the threat" to establish a person is a clear and present danger of harm to others; a plan to commit an act is sufficient. **In re B.W.**, 250 A.3d at 1177. Since the trial court is required to defer to Dr. Sahadevan's findings, and the record supports the doctor's conclusion that J.M. was a clear and present danger to others, we find no abuse of discretion in the trial court's determination that the evidence supported Dr. Sahadevan's conclusion that J.M. was severely mentally disabled, requiring immediate inpatient treatment. **See** 50 P.S. § 7302(b).

In his second claim, J.M. contends that his involuntary commitment should be expunged based upon a violation of his due process rights under the MHPA. J.M.'s Brief at 15-19. In particular, J.M. alleges that a physician failed to evaluate him within two hours of his arrival at the hospital. **Id.** at 15. J.M. argues that he arrived at the facility at 11:01 p.m. on November 30, 2020, but that a psychiatrist did not evaluate him until 10:00 a.m. on

December 1, 2020. *Id.* at 16. According to J.M., a medical doctor checked his vital signs upon arriving at the hospital and then placed him in a hallway for twelve hours until the psychiatrist examined him the next morning. *Id.* at 16-7. J.M. claims that merely checking his vital signs, which any nurse or nursing assistant could do, fails to satisfy the examination requirement of the MHPA. *Id.* at 17. J.M. further asserts that there was no need for immediate treatment if a physician does not need to see a patient within two hours of arriving at the facility. *Id.* at 18. J.M. additionally argues that the trial court's consideration of the COVID-19 pandemic as an excuse to comply with the two-hour limit was improper and cannot be used to avoid his due process rights.[5] *Id.* at 19.

As our discussion above reflects, section 6111.1(g)(2) provides a mechanism for a person to petition the common pleas court to review the sufficiency of the evidence to support a 302 commitment. *See* 18 Pa.C.S. § 6111.1(g)(2); *see also In re Vencil*, 152 A.3d at 237 ("The plain language of Section 6111.1(g)(2) requires a court of common pleas to review **only** the sufficiency of the evidence to support the 302 commitment.") (emphasis added). Section 6111.1(g)(2) does not, however, allow for expungement based upon purported due process violations or procedural irregularities

---

[5] This argument is in response to the trial court's opinion, wherein it stated that "J.M.'s request to see a psychiatrist in person, during the height of the COVID-19 pandemic, caused a delay to Dr. Sahadevan signing the Report." Trial Court Opinion, 8/14/2023, at 36.

related to a 302 commitment. ***See In re P.M.***, 230 A.3d 454, 458 (Pa. Super. 2020) (rejecting petitioner's due process claim as a means to expunge his section 302 commitment). As our Supreme Court observed,

> a section 6111.1(g)(2) review is not a direct appeal from a 302 commitment and the interest at stake under 6111.1(g)(2) is not one's right to liberty. The infringement upon [a petitioner's] liberty occurred when []he was involuntarily committed pursuant to section 302 of the MHPA. By the time a section 6111.1(g)(2) petition is filed, the liberty deprivation has ended. A sufficiency review pursuant to section 6111.1(g)(2) of the Uniform Firearms Act is merely a mechanism to expunge the [Pennsylvania State Police] record of an individual's 302 commitment to remove this barrier to his or her possession and control of firearms.

***In re Vencil***, 152 A.3d at 245.

Here, J.M.'s second basis for his expungement request is based upon a claimed due process violation regarding the alleged failure of a physician to evaluate him within two hours of arriving at the hospital as required by the MHPA. ***See*** J.M.'s Brief at 15-19. As this is not a means for obtaining expungement of a 302 commitment, we cannot grant J.M. relief on this claim. ***See In re Vencil***, 152 A.3d at 245; ***In re P.M.***, 230 A.3d at 458.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>03/05/2024</u>