J-S50024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 289 WDA 2019 |

Appeal from the Order Entered February 13, 2019
In the Court of Common Pleas of Blair County Civil Division at No(s):
2018 GN 2882

BEFORE: LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.: **FILED NOVEMBER 1, 2019**

B.W. (Appellant) appeals from the order denying his petition to expunge mental health records relating to his involuntary commitment under the Mental Health Procedures Act (MPHA), 50 P.S. § 7302 (Section 302). After careful consideration, we reverse.

Appellant was involuntarily committed to the Psychiatric Wing at University of Pittsburgh Medical Center (UPMC) on September 6, 2018. Appellant initially "drove to his doctor's office," where he presented complaints of "Anxiety." Trial Court Opinion, 3/1/19, at 13, 15. Appellant was having problems at work, where he was responsible for "splicing lines in a bucket truck," and experiencing conflict with co-workers and union representatives. *Id.* at 12-14.

---

[*] Retired Senior Judge assigned to the Superior Court.

The treating physician, Dr. Terry Ruhl, M.D., indicated the visit diagnosis as "Agitation-Primary," and noted:

> Anxiety and anger feelings. Making credible threats of violence against a co-worker but is here for help. Girlfriend has concerns for his safety.
>
> Crisis here now — expect they will recommend inpatient treatment, involuntary if necessary. UPMC police here for safety, but he has made no threats against staff.

Appellant's Exhibit #1, at *1.

In the application for involuntary emergency examination and treatment, Dr. Joseph Sumereau, D.O., concluded that Appellant was a "[c]lear and present danger to others." Pennsylvania State Police (PSP) Exhibit #1, at 3. Dr. Sumereau stated:

> I, Dr. Sumereau, was present while patient stated that he would strangle another person to death. He then gave the name of the intended victim. Patient stated that he was not sure when or where he would perform this act, but he would do it the next time he saw the person.

*Id.*

Appellant was subsequently transported to the Psychiatric Wing at UPMC. There, Dr. Mercedes Boggs, M.D., performed an examination pursuant to Dr. Sumereau's application for involuntary emergency examination. Dr. Boggs noted:

> [Appellant] is homicidal toward his coworker and admits to stating that he would strangle him. [Appellant] is very angry and agitated, danger to others. Not receptive to voluntary admission[.]

PSP Exhibit #1, at 7.

- 2 -

In completing the "RESULTS OF EXAMINATION" portion of the "APPLICATION FOR INVOLUNTARY EMERGENCY EXAMINATION AND TREATMENT," Dr. Boggs checked the box indicating that Appellant "was in need of treatment" and "should be admitted to a facility designated by the County Administrator for a period of treatment not to exceed 120 hours." PSP Exhibit #1, at 7. Consequently, Appellant was involuntarily committed on September 6, 2018.

On October 2, 2018, Appellant filed a petition to expunge mental health record. The trial court convened a hearing on January 4, 2019, at which Appellant and his girlfriend, A.G., testified. After receiving legal memoranda from the parties, the trial court issued an order and opinion denying Appellant's petition on February 13, 2019. Appellant filed a timely appeal. Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents a single issue for our review:

> Whether or not the lower court erred by denying and dismissing the Petition to Expunge Mental Health Record?

Appellant's Brief at 4.

Appellant argues that the Commonwealth failed to produce sufficient evidence that he acted in furtherance of his threat to harm his co-worker. *See* Appellant's Brief at 10. Appellant concedes that he made "a statement about strangling a co-worker," but emphasizes "there was no evidence presented that he ever committed any acts in furtherance of said statement." *Id.*

We review the trial court's denial of expungement for an abuse of discretion. **Commonwealth v. Smerconish**, 112 A.3d 1260, 1263 (Pa. Super. 2015) (citations omitted). However, Appellant's question of evidentiary sufficiency presents a "pure question of law, over which our standard of review is *de novo* and our scope of review is plenary." **In re Vencil**, 152 A.3d 235, 241 (Pa. 2017), *cert. denied sub nom.* **Vencil v. Pennsylvania State Police**, 137 S. Ct. 2298, 198 L. Ed. 2d 751 (2017).

In his petition for expungement, Appellant averred that the record of his involuntary commitment is "very detrimental" to him "employment wise and in his ability to carry a firearm." Appellant's Petition to Expunge Mental Health Record, 10/2/18, at *3.

Section 6111.1(g)(2) of the Uniform Firearms Act (UFA) provides:

A person who is involuntarily committed pursuant to section 302 of the Mental Health Procedures Act may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged.

18 Pa.C.S.A. § 6111.1(g)(2).[1]

Our Supreme Court has held that "[a] sufficiency review pursuant to [S]ection 6111.1(g)(2) of the UFA is merely a mechanism to expunge the

---

[1] While Appellant does not specifically reference Section 6111.1(g)(2) in his petition, the trial court cites the statute as Appellant's avenue for relief. Trial Court Opinion and Order, 2/13/19, at 3 ("[Appellant] seeks expungement of his 302 Commitment pursuant to §6111.1(g)(2) . . .").

- 4 -

PSP's record of an individual's Section 302 commitment to remove this barrier to his or her possession and control of firearms." ***Vencil***, 152 A.3d at 245 (footnote omitted). Therefore, a Section 6111.1(g)(2) expungement petition does not require further evidentiary proceedings; rather, "the plain language of section 6111.1(g)(2) directs a trial court to review the physician's findings, made at the time of the commitment, to determine whether the evidence known by the physician at the time, as contained in the contemporaneously-created record, supports the conclusion that the individual required commitment under one (or more) of the specific, statutorily-defined circumstances." ***Id.*** at 242.

> Further,

> Section 6111.1(g)(2) does not . . . authorize a trial court to "redecide[ ] the case," operating as a "substitute[ ]" for the physician who originally decided the 302 commitment was medically necessary.

***Vencil***, 152 A.3d at 244 (citations omitted).

The Supreme Court concluded that under Section 6111.1(g)(2), a trial court is required "to review only the sufficiency of the evidence to support the 302 commitment, limited to the information available to the physician at the time he or she made the decision to commit the individual, viewed in the light most favorable to the physician as the original decision-maker to determine whether his or her findings are supported by a preponderance of the evidence." ***Id.*** at 237.

Section 301, which defines who may be subject to involuntary emergency examination and treatment, provides:

> **(a) Persons Subject.**--Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself, as defined in subsection (b)[.]
>
> **(b) Determination of Clear and Present Danger.**--(1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated. . . . For purposes of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm **and has committed acts in furtherance of the threat to commit harm.**

50 P.S. § 7301(a), (b) (emphasis added).

To determine if an individual meets the above criteria, Section 302 provides:

> **(a) Application for Examination.--**Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.
>
>> (1) Warrant for Emergency Examination.--Upon written application by a physician or other responsible party setting forth facts constituting reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment, the county administrator may issue a warrant requiring a

person authorized by him, or any peace officer, to take such person to the facility specified in the warrant.

(2) Emergency Examination Without a Warrant.-- Upon personal observation of the conduct of a person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment, and physician or peace officer, or anyone authorized by the county administrator may take such person to an approved facility for an emergency examination. Upon arrival, he shall make a written statement setting forth the grounds for believing the person to be in need of such examination.

**(b) Examination and Determination of Need for Emergency Treatment.--**A person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of section 301(b) and in need of immediate treatment. If it is determined that the person is severely mentally disabled and in need of emergency treatment, treatment shall be begun immediately.

. . .

**(d) Duration of Emergency Examination and Treatment.**--A person who is in treatment pursuant to this section shall be discharged whenever it is determined that he no longer is in need of treatment and in any event within 120 hours[.]

50 P.S. § 7302(a), (b), & (d) (footnotes omitted).

Appellant admits "there was a threat made to a co-worker" in the presence of medical professionals on September 6, 2018. **See** Appellant's Brief at 19; **see also** N.T., 1/4/19, at 10. However, Appellant emphasizes "there was no evidence that this threat was accompanied by an act in furtherance of said threat to commit harm." Appellant's Brief at 19-20. Upon review, we agree.

The trial court commented at length:

- 7 -

In applying the **Vencil** standard, there can be no dispute that [Appellant] made threats of harm to another individual, specifically, his co-worker. However, there remains the legal requirement that [Appellant] took an "act in furtherance of the threat of harm." In this particular case, there is no evidence that [Appellant] ever communicated this threat of harm to the specific co-worker, nor to any other third party, prior to driving himself to the doctor's office. There is no evidence that [Appellant] engaged, attempted to engage, in any physical altercation with this co-worker in any fashion. There is no evidence that [Appellant] did any research on the internet relative to how to strangle or harm another individual. There is no evidence that he sent any threatening text messages, notes, letters or other threatening communication of any nature whatsoever toward this co-worker, or to any third party about this co-worker.

In its Memorandum of Law, the Blair County Department of Social Services submits that [Appellant] "had a very explicit plan in place to carry it (the threatened harm) out." Blair County Dept.'s Memorandum of Law, p. 2. In its Memorandum, the PSP asserts that [Appellant] made the threat toward the co-worker "at the time he had a specific plan of how he would harm his co-worker and when." PSP Memorandum, p. 6.

In considering all of the above, it seems to us that the central issue is whether the following comment by Dr. Sumereau satisfies the legal requirement that [Appellant] committed an act in furtherance of his threat to commit harm to another:

> "Patient stated that he was not sure when or where he would perform this act, but he would do it the next time he saw this person." PSP Ex. 1, p. 3 of 7.

To answer this question, however, we are to apply the standard set forth in **Vencil, supra**. In doing so under the preponderance of the evidence standard, we find that the evidence known by the physician at the time, as contained in the contemporaneously-created record, supports the conclusion that [Appellant] presented a clear and present danger to others, requiring a 302 commitment. We must give deference to the physician, as the original factfinder, as the physician examined and evaluated [Appellant], and was able to observe his demeanor.

Based upon the physician's training, knowledge and experience, she determined that a 302 commitment was medically necessary.

In so ruling, however, we find no fault with [Appellant]. In fact, we find his testimony, and the testimony of [A.G.], to be credible. We understand why [Appellant] felt angry and frustrated with the situation at work. [Appellant] is to be commended for going to his family doctor's office to seek help, rather than taking matters into his own hands. As set forth above and in following the guidelines announced . . . in **Vencil**, our scope of review is very limited.

Trial Court Opinion and Order, 2/13/19, at 15-17.

Mindful of our *de novo* standard of review and plenary scope of review, we have carefully reviewed the record and prevailing legal authority and, contrary to the trial court, conclude that Appellant did not "commit an act in furtherance of the threat to commit harm," as prescribed in 50 P.S. § 7301(b).

The Supreme Court in **Vencil** specified:

[T]he phrase "sufficiency of the evidence" is a term of art that has a precise meaning. **See Commonwealth v. Hicks**, 365 Pa. 153, 74 A.2d 178, 178 (Pa. 1950) ("[I]t is axiomatic that words having a precise and well-settled legal meaning must be given that meaning when they appear in statutes unless there is a clear expression of legislative intent to the contrary."); **see also generally Morissette v. United States**, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.").

**Vencil**, 152 A.3d at 242–43.

In considering the "precise meaning" of the words "**commit an act in furtherance**," we find that the trial court improperly construed Appellant's

**statement** "that he was not sure when or where he would perform this act, but he would do it the next time he saw this person," as an "**act** in furtherance."

Recently, this Court was presented with analogous facts in *Interest of K.M.*, 1677 MDA 2018, 2019 WL 3243142 (Pa. Super. July 17, 2019) (unpublished memorandum), which we find persuasive.[2] In *K.M.*, the petitioner appealed from the trial court's denial of his petition for expungement relating to his involuntary commitment under Section 302. *Id.* at *1. The petitioner was involuntarily committed after making homicidal and suicidal statements to employees at a medical clinic. *Id.* The petitioner subsequently and unsuccessfully requested that the trial court expunge his mental health records under Section 6111.1(g)(2). *Id.* at *2. The petitioner then appealed to this Court, alleging that "under Section 6111.1(g)(2) of the UFA, the evidence is insufficient to sustain his Section 302 commitment because he did not act in furtherance of any threat to harm himself or others." *Id.* at *3. We agreed, stating:

> Instantly, based on our review of the record, in particular the information available to the physician at the time of [petitioner's] Section 302 commitment, we conclude that the evidence was insufficient to support [petitioner's] Section 302 commitment. Specifically, we agree with [petitioner's] argument that the record is bereft of any evidence that he acted in furtherance of his threat to harm others or commit suicide. The record reveals only that

---

[2] Unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019 may be cited for their persuasive value. Pa.R.A.P. 126(b).

[petitioner], at most, made certain statements at the clinic that led the clinic's staff to believe that he was harboring suicidal ideations. Thereafter, [petitioner] returned to his sister's home where the police eventually confronted him. Although [petitioner] admitted at the hearing to storing firearms in the shed outside of the house, the record does not reveal that the police or the physician were aware of [petitioner's] ownership or possession of firearms prior to or at the time of the Section 302 commitment[.] The record also does not reveal that the police recovered any weapons, let alone firearms, when they searched [petitioner's] person prior to transporting him to [Mount Nittany Medical Center]. **Simply put, besides examples of threatening thoughts and statements, the record contains no evidence of any act undertaken by [petitioner] in furtherance of his threat to harm himself or others**. *See e.g., Vencil*, 152 A.3d at 239 (noting an act in furtherance of suicidal ideations was established when the committee "fled the hospital 'in an emotionally distraught state, and drove in an erratic and dangerous fashion with her headlamps off . . . at risk for striking another motor vehicle, causing a traffic accident.'"); *Smerconish*, 112 A.3d at 1264 (noting that the appellant's internet research seeking painless methods of committing suicide constituted an act in furtherance of the threat to commit harm); *In re R.D.*, 739 A.2d 548, 555 (Pa. Super. 1999) (noting that an elderly woman's act of picking up her cane in an effort to hit another, together with verbal threats of harm, constituted an "act in furtherance of the threat to commit harm" under Section 301); [*In re*] *Woodside*, 699 A.2d [1293, 1297 (Pa. Super. 1997)] (noting the man's purchase of a rifle scope from a sporting goods store on the day of his commitment constituted an overt act in furtherance of the threat to harm his estranged wife). Accordingly, we must conclude that all of the records of [petitioner's] Section 302 commitment must be expunged and destroyed.

*Id.* at *5 (emphasis added) (footnote omitted).

As with our holding in *K.M.*, we conclude that the evidence of record supports expungement of Appellant's mental health records relating to his involuntary commitment. Appellant asserts — correctly — that he "did not commit an act in furtherance of said threat." Appellant's Brief at 13, 19-20.

In response, neither the Blair County Department of Human Services nor the PSP cite to any evidence that Appellant acted in furtherance of his threat. Like the trial court, both Appellees reference Appellant's statement that he would perform a harmful act as the act itself. **See** Blair County Department of Human Service Brief at 4 ("In this case[,] Appellant not only made a threat to inflict serious bodily injury or death, he had a very explicit plan to carry out the threat[.]"); PSP Brief at 6 ("[Appellant] made a specific threat toward an identified individual and indicated his intent to carry it out the next time he was able."). While PSP attempts to distinguish our holding in **K.M.** by referencing Appellant's identification of his intended victim and manner in which he would carry out the threat, PSP Brief at 7, the threat itself, without more, does not constitute an act in furtherance of the threat. **See K.M.** at *5 ("besides examples of threatening thoughts and statements, the record contains no evidence of any act undertaken by Appellant in furtherance of his threat to harm himself and others."). Finally, we repeat the trial court's observation that:

> In this particular case, there is no evidence that [Appellant] ever communicated this threat of harm to the specific co-worker, nor to any other third party, prior to driving himself to the doctor's office. There is no evidence that [Appellant] engaged, attempted to engage, in any physical altercation with this co-worker in any fashion. There is no evidence that [Appellant] did any research on the internet relative to how to strangle or harm another individual. There is no evidence that he sent any threatening text messages, notes, letters or other threatening communication of any nature whatsoever toward this co-worker, or to any third party about this co-worker.

Trial Court Opinion and Order, 2/13/19, at 15.

For the foregoing reasons, we reverse the order denying Appellant's petition to expunge mental health record, such that all records of Appellant's Section 302 commitment must be expunged and destroyed.

Order reversed. Case remanded. Jurisdiction relinquished.
Judge Colins joins the memorandum.

Judge Lazarus files a dissenting memorandum.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/1/19