J-S23035-21

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| JOSEPH C. GENITS, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| Appellee | : | No. 191 EDA 2021 |

Appeal from the Order Entered December 7, 2020
in the Court of Common Pleas of Carbon County
Civil Division at No(s): No. 20-0227

BEFORE:    LAZARUS, J., KUNSELMAN, J. and COLINS, J.*

MEMORANDUM BY COLINS, J.:                **FILED OCTOBER 8, 2021**

Joseph C. Genits (Appellant) appeals from the December 7, 2020 order, which denied his petition for expungement of mental health records pursuant to 18 Pa.C.S. § 6111.1(g)(2) relating to his involuntary commitment under the Mental Health Procedures Act (MHPA), 50 P.S. § 7302 (Section 302).  Upon review, we affirm.

Preliminarily, before setting forth the factual and procedural history of this case, we begin with the legal framework governing this issue.  With respect to the MHPA and the expungement of involuntary commitment records, our Supreme Court explained the following:

> The legislature enacted Pennsylvania's [MHPA], 50 P.S. §§ 7101–7503, to establish procedures "to assure the availability of adequate treatment to persons who are mentally ill."  50 P.S. § 7102.  The MHPA's provisions "shall be interpreted in conformity with the principles of due process to make voluntary and involuntary treatment available where the need is great and its

* Retired Senior Judge assigned to the Superior Court.

absence could result in serious harm to the mentally ill person or to others." ***Id.*** One treatment option the MHPA governs is involuntary emergency examination and treatment, commonly referred to as a "302 commitment." ***See*** 50 P.S. § 7302. Section 302 of the MHPA provides that an involuntary emergency examination of a person may occur upon a physician's certification. 50 P.S. § 7302(b). If the examining physician determines "that the person is severely mentally disabled and in need of emergency treatment, treatment shall be begun immediately" and may continue for up to 120 hours. 50 P.S. § 7302(b), (d); ***see also*** 50 P.S. § 7301(a) (providing a person who is "severely mentally disabled and in need of treatment" may be subject to "involuntary emergency examination and treatment").

Section 301 further provides that a person is "severely mentally disabled" when mental illness causes the person's "capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself[.]" 50 P.S. § 7301(a). Section 301(b)(1) lists the following criteria for showing a person is a clear and present danger of harm to others:

> (b) **Determination of Clear and Present Danger.**--(1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated. If, however, the person has been found incompetent to be tried or has been acquitted by reason of lack of criminal responsibility on charges arising from conduct involving infliction of or attempt to inflict substantial bodily harm on another, such 30-day limitation shall not apply so long as an application for examination and treatment is filed within 30 days after the date of such determination or verdict. In such case, a clear and present danger to others may be shown by establishing that the conduct charged in the criminal proceeding did occur, and that there is a reasonable probability that such conduct will be repeated. For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.

- 2 -

50 P.S. § 7301(b)(1).[1]

_____

[1] Section 301(b)(2) contains the criteria for determining that a person is a danger to himself or herself:

> (2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:
>
> > (i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act; or
>
> > (ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide; or
>
> > (iii) the person has substantially mutilated himself or attempted to mutilate himself substantially and that there is the reasonable probability of mutilation unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger shall be established by proof that the person has made threats to commit mutilation and has committed acts which are in furtherance of the threat to commit mutilation.

50 P.S. § 7301(b)(2).

The Pennsylvania Uniform Firearms Act of 1995 (UFA), 18 Pa.C.S. §§ 6101–6128, makes it unlawful for a person who has been involuntarily committed under Section 302 to "possess, use, control, sell, transfer or manufacture" a firearm or to obtain a license to conduct any of those activities. 18 Pa.C.S. § 6105(a)(1), (c)(4). However, the UFA provides two ways for the subject of a 302 commitment to obtain relief from the Section 6105(a)(1) firearm restrictions. [The first means] is a court-ordered expungement of the 302 commitment record under Section 6111.1(g)(2), which provides:

(g) Review by court.—

* * *

(2) A person who is involuntarily committed pursuant to section 302 of the [MHPA] may petition the court to review the sufficiency of the evidence upon which the commitment was based. If the court determines that the evidence upon which the involuntary commitment was based was insufficient, the court shall order that the record of the commitment submitted to the Pennsylvania State Police be expunged. A petition filed under this subsection shall toll the 60-day period set forth under section 6105(a)(2).

18 Pa.C.S. § 6111.1(g)(2).[2]

_____
[2] The second means for the subject of a 302 commitment to obtain relief from the Section 6105(a)(1) firearms restrictions is to petition the trial court to grant relief based on a finding that "the applicant may possess a firearm without risk to the applicant or any other person." 18 Pa.C.S. § 6105(f)(1).

*In re B.W.*, 250 A.3d 1163, 1165–67 (Pa. 2021).

With this legal framework in mind, we turn to the factual and procedural history of this case. On April 25, 2014, Appellant's adult daughter filed an application for involuntary emergency examination and treatment of Appellant

pursuant to Section 302. Therein, she stated that she believed Appellant was a clear and present danger to others and himself. Specifically, she described how Appellant was not taking his cancer medications, had substantial and rapid weight loss, and had made statements about not wanting to live. Section 302 Application, 4/25/14, at 3. She specified that Appellant owned guns and "mentioned using them on others and himself within the last two weeks everyday" and that he had "mentioned hurting others and himself by taking others he loves with him." *Id.* She also indicated that he had sold his home in Texas the week prior, drove back to his hometown of Lansford, Pennsylvania, and was "getting rid of his property by giving it away." *Id.* at 3-4. She stated that Appellant had told her "to have police back off or he will 'go bal[l]istic' that they wouldn't find his body." *Id.* at 4 (unnecessary capitalization omitted). She stated that Appellant was seeking assistance from others in his hometown "to get through to his ex-wife" after she had "moved on" with another relationship.[1] *Id.* His daughter said she feared that without medical assistance, he would "definitely" hurt himself and "quite possibly" hurt others. *Id.* Finally, Appellant's daughter stated that during Appellant's

---

[1] At the time of the application, Appellant's ex-wife lived in Georgia and Appellant had traveled by plane to visit her there. Memorandum Opinion, 12/7/20, at 1-2. It appears from the record that Appellant was married and divorced twice and that this reference is to his second ex-wife. *See* Petition for Expungement, 1/30/20, at Exh. A; N.T., 7/21/20, at 42.

divorce from her mother 20 years ago,[2] Appellant attempted suicide by overdosing and was taken to a hospital. *Id.* Based upon the foregoing, the county administrator issued a warrant pursuant to Section 302 for Appellant to be transported to and examined at a local hospital and, if required, to be admitted for treatment for up to 120 hours. *Id.* at 6.

Upon Appellant's return from Georgia to Pennsylvania on April 26, 2014, he was taken into custody at the Lehigh – Northampton Airport and transported to Lehigh Valley Hospital – Muhlenberg (Muhlenberg Hospital) in Bethlehem, Pennsylvania, where he arrived at 6:38 p.m. At 8:30 p.m., Appellant was examined by Kenneth Katz, M.D. Dr. Katz reported the results of his examination as follows: "perseverating/incessant/obsessive thoughts about this ex-wife[,] visiting her in Georgia when she told him not to – appears to be stalking wife[;] tangential and poor insight into current situation." *Id.* at 8. Based on these findings, Dr. Katz determined that Appellant needed "inpatient psychiatric treatment" and in his opinion, Appellant was "severely mentally disabled and in need of treatment" and should be admitted "for a period of treatment not to exceed 120 hours." *Id.* Appellant was admitted to Muhlenberg Hospital, and the next day, he was transferred to Gnaden Huetten

---

[2] It appears from the record that this reference is to Appellant's first ex-wife. *See* Petition for Expungement, 1/30/20, at Exh. A.

Memorial Hospital in Lehighton, Pennsylvania, where he remained until his discharge on May 1, 2014.

On January 30, 2020, Appellant filed a petition seeking expungement of records relating to his 302 commitment and restoration of his ability to possess a firearm pursuant to the UFA. The trial court held a hearing on July 21, 2020, at which Appellant testified and presented the testimony of four character witnesses. The court admitted the parties' exhibits consisting of documents relating to Appellant's 302 commitment, hospital records, and a private psychiatric evaluation of Appellant completed five months after his discharge.

On December 7, 2020, the trial court denied Appellant's expungement request pursuant to 18 Pa.C.S. § 6111.1(g), but granted his request for restoration of his ability to possess a firearm pursuant to 18 Pa.C.S. § 6105(f)(1). This timely-filed appeal followed.[3]

Appellant presents five issues for our review:

> 1[.] Where the [MHPA] requires that an individual who is to be involuntarily committed must have inflicted or attempted to inflict serious bodily harm on another within the previous thirty days and that there is a reasonable probability that such conduct will be repeated or alternatively, if within the previous thirty days the person acted in such a manner as to evidence that there is a

---

[3] Appellant filed his statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on February 3, 2021, and the trial court entered its Rule 1925(a) opinion on February 12, 2021. At issue in this appeal is the trial court's denial of Appellant's expungement request pursuant to 18 Pa.C.S. § 6111.1(g)(2). The Pennsylvania State Police (PSP) did not appeal the restoration of Appellant's ability to possess a firearm pursuant to 18 Pa.C.S. § 6105(f)(1).

reasonable probability that death, serious bodily injury or serious physical debilitation would ensue in thirty days unless adequate treatment were afforded and the evidence presented at time of the hearing before [the trial court] did not reflect any attempt to cause serious bodily injury nor any infliction of serious bodily injury either in the previous thirty days to the commitment or at all, was the doctor who signed that commitment of [A]ppellant justified in making the determination that the petitioner was a "clear and present" danger to himself or others when the evidence supporting the commitment consisted solely of the documentary evidence indicating what the doctor determined without any testimony from said doctor?

2[.] Given the unrebutted testimony of []Appellant and contradictory documentary evidence presented to the [trial c]ourt which indicated, *inter alia*, that Appellant was never advised of his right to contact an attorney, he was not given a copy of the [Section] 302 commitment papers at the Muhlenberg Hospital, he was not advised of why he was being taken into custody at the airport[] nor was he given any documents supporting him being taken into custody at that time, was petitioner denied his due process rights under mental health commitment pursuant to the [MHPA]?

3[.] Did the [trial c]ourt commit reversible error when it ruled that the follow-up assessment and evaluation completed by Dr. Raja Abbas, a psychiatrist, at Gnaden Huetten Hospital, was irrelevant and unusual and in fact sustained an objection as to the relevancy of the certification of Dr. Abbas and then makes the specific finding on Page 4 of its Opinion that "After examination, [Appellant] remained committed to the hospital pursuant to Dr. Abbas' opinion and recommendation..."?

4[.] Whether the [trial] court erred in its reliance upon the exhibit submitted by the State Police, namely PSP-1, when the exhibit contained many errors, including, *inter alia*, contradictory timelines, incorrect information about [A]ppellant driving to Georgia, the representation by an unknown hospital representative, namely "Christine H" who never testified as to what she did or did not do, the electronic signature on said document by Dr. Katz, etc. ?

5[.] Whether the [trial] court correctly interpreted the factors to be required to justify a [Section] 302 Mental Health Commitment

pursuant to [the MHPA], especially when the trial court arbitrarily chose one of at least two conflicting times contained in Dr. Katz's report to determine that Appellant was seen within two hours of arrival, when the burden is preponderance of the evidence and the scales must be tipped?

Appellant's Brief at 5–7 (suggested answers omitted and unnecessary capitalization omitted).

"We review the trial court's denial of a motion for expunction for an abuse of its discretion." *A.M.M. v. Pa. State Police*, 194 A.3d 1114, 1117 (Pa. Super. 2018) (citation omitted). "Additionally, given that we are reviewing a Section 6111.1(g)(2) expungement ruling, we are limited to considering the evidence the physician knew at the time of the 302 commitment." *B.W.*, 250 A.3d at 1170.

> [Our Supreme] Court clarified the appropriate review of a Section 6111.1(g)(2) petition to expunge a 302 commitment record based on the sufficiency of the evidence to support the 302 commitment in *In re Vencil*, 638 Pa. 1, 152 A.3d 235 (2017):
>
> > Under section 6111.1(g)(2), a challenge to the sufficiency of the evidence to support a 302 commitment presents a pure question of law, and the court's sole concern is whether, based on the findings recorded by the physician and the information he or she relied upon in arriving at those findings, the precise, legislatively-defined prerequisites for a 302 commitment have been satisfied and are supported by a preponderance of the evidence. We emphasize that the trial court's review is limited to the findings recorded by the physician and the information he or she relied upon in arriving at those findings, and requires deference to the physician, as the original factfinder, as the physician examined and evaluated the individual in the first instance, was able to observe his or her demeanor, and has particularized training,

> knowledge and experience regarding whether a 302 commitment is medically necessary.
>
> ***Vencil***, 152 A.3d at 246 (rejecting *de novo* review subject to clear and convincing burden of proof for Section 6111.1(g)(2) petitions).

***B.W.***, 250 A.3d at 1167.

Here, Appellant argues that "the evidence presented at the time of the hearing … did not reflect any attempt to cause serious bodily injury nor any infliction of serious bodily injury either in the previous thirty days to the commitment or at all." Appellant's Brief at 14-15. While Appellant acknowledges that his daughter had averred that Appellant "was going to hurt himself and others," he contends there was "not one shred of evidence of any definitive action taken in furtherance of any such statement." ***Id.*** at 19. Thus, he argues, "since there was no proof of any action being taken[,] it goes without saying that no doctor can say that there can be a repeat of such conduct." ***Id.*** Appellant concedes he was "absolutely" upset "due to the break[-]up of his marriage and also the rigors of relocation … but also due to an unfounded and unnecessary 302 commitment application being filed by his own daughter." ***Id.*** According to Appellant, this is insufficient evidence to warrant a 302 commitment. ***Id.*** at 20.

The trial court analyzed this issue as follows:

Appellant['s] daughter [] swore out the application for involuntary emergency examination and treatment on April 25, 2014[,] claiming that her father may be homicidal and suicidal based upon his recent comments and actions. Those comments included that her father "does not want to live" and "ha[d] mentioned hurting

others and himself by taking others he loves with him." [N.T., 7/21/20, at Exh. PSP-1 at 4.] The actions that [Appellant's daughter] set forth in her application included the fact that [Appellant] had flown to Georgia to see his ex-wife. Obviously, these comments and these actions can be construed as "threats of harm" and "acts in furtherance of that threat to commit harm,["] thus supporting a claim of clear and present danger pursuant to 50 P.S. § 7301(b). This same information was available and presented to Dr. [] Katz[,] who conducted the emergency examination pursuant to the statute. At the conclusion of that examination and based upon the information available to him, Dr. Katz found that [Appellant] had exhibited: "perseverating/incessant/obsessive thoughts about his ex-wife, visiting her in Georgia when she told him not to – appears to be stalking wife[. T]angential and poor insight into current situation." [*Id.* at Exh. PSP-1 at 9.] Based upon those findings, Dr. Katz recommended that [Appellant] undergo inpatient psychiatric treatment. Dr. Katz further opined that [Appellant] was severely mentally disabled and in need of treatment as required by [Section 302] of the MHPA.

As factfinder, the trial court gives deference to Dr. Katz'[s] findings that [Appellant] presented a clear and present danger to others, to wit: his ex-wife.

Rule 1925(a) Opinion, 2/12/21, at 5-6 (some quotation marks omitted; some brackets in original; citation format altered); *see also* Memorandum Opinion, 12/7/20, at 9–11.

As noted above, Section 301 contains criteria for when a person is a clear and present danger to oneself or another. Upon examination, Dr. Katz found Appellant was perseverating and had incessant and obsessive thoughts about his ex-wife, appeared to be stalking his ex-wife, and had poor insight into his current situation. N.T., 7/21/20, at Exh. PSP-1 at 9. Further, the information Dr. Katz relied upon at the time of Appellant's 302 commitment was that Appellant had threatened daily for the past two weeks to use guns

he owned to harm himself and loved ones; had recently divorced and relocated; was "getting rid" of his property by giving it away; had flown to Georgia to visit his ex-wife against her express wishes; and had told his daughter to "have police back off or he will 'go bal[l]istic' that they wouldn't find his body." *Id.* at Exh. PSP-1 at 4-5 (unnecessary capitalization omitted). Pursuant to ***Vencil***, the trial court properly accorded deference to Dr. Katz "as the physician [who] examined and evaluated the individual in the first instance, was able to observe his or her demeanor, and has particularized training, knowledge and experience regarding whether a 302 commitment is medically necessary." 152 A.3d at 246; ***see also B.W.***, 250 A.3d at 1176 (same). Accordingly, we discern no abuse of discretion in the trial court's decision that the "legislatively-defined prerequisites for a 302 commitment have been satisfied and are supported by a preponderance of the evidence." ***Vencil***, 152 A.3d at 246.

Appellant next claims due process violations in connection with his 302 commitment. He cursorily complains that he was not: (1) advised of his right to an attorney; (2) provided copies of certain documents relating to his 302 commitment; (3) advised as to why he was being taken into custody; or (4) examined by Dr. Katz within two hours of his arrival at the hospital.[4] Appellant's Brief at 20.

---

[4] In alleging due process violations, Appellant does not cite to any specific provision of the MHPA or the Pennsylvania or United States Constitutions that he claims were violated.

We note that in **Vencil**, our Supreme Court stressed that

a Section 6111.1(g)(2) review is not a direct appeal from a 302 commitment and the interest at stake under 6111.1(g)(2) is not one's right to liberty. The infringement upon Vencil's liberty occurred when she was involuntarily committed pursuant to [S]ection 302 of the MHPA. By the time a [S]ection 6111.1(g)(2) petition is filed, the liberty deprivation has ended. A sufficiency review pursuant to [S]ection 6111.1(g)(2) of the [UFA] is merely a mechanism to expunge the PSP's record of an individual's 302 commitment to remove this barrier to his or her possession and control of firearms.

152 A.3d at 245 (footnote omitted). Our Supreme Court has "interpreted the absence from the MHPA of an appeals process for 302 commitments as a deliberate legislative choice, inasmuch as the General Assembly could have supplied one if it chose to." **In re J.M.Y.**, 218 A.3d 404, 416 (Pa. 2019), *citing* **Vencil**, 152 A.3d at 243–45; **see also In re P.M.**, 230 A.3d 454, 457–58 (Pa. Super. 2020) (declining to consider a Section 302 due process claim raised in a Section 6111.1(g)(2) review); **accord In re J.M.Y.**, 218 A.3d at 416–18 (holding that Section 6111.1(g)(2) "by its terms, empowers a court to entertain a petition testing the sufficiency of the evidence for a Section 302 commitment; however, it does not authorize a court to consider whether a certification for involuntary mental health treatment pursuant to Section 303[5] was validly entered" and thus, refusing to consider due process claim raised in a Section 6111.1(g)(2) review). Thus, Section 6111.1(g)(2) merely allows a person who is precluded from possessing or owning firearms due to

---

[5] Section 303 provides, *inter alia*, that a treatment facility may apply to extend the 302 commitment for up to 20 days. 50 P.S. § 7303.

a prior involuntary mental health commitment to seek to expunge the record of that commitment. However, it does not provide a basis to challenge the commitment itself. Accordingly, no relief is due.

In his third issue, Appellant argues that the trial court erred when it referenced a report by Raja Abbas, M.D. in the trial court's recitation of the facts in its memorandum opinion. Appellant's Brief at 21–25. By way of background, the day after Appellant's 302 commitment at Muhlenberg Hospital, he was transferred to Gnaden Huetten Memorial Hospital where Dr. Abbas, a psychiatrist, examined Appellant and completed an initial psychiatric evaluation report. The report was introduced by Appellant, and admitted without objection, at the expungement hearing. *See* N.T., 7/21/20, at 20–21, Pet. Exh. 2 at 4–6 (pagination supplied). On direct examination, Appellant was questioned about Dr. Abbas's report. PSP lodged a relevancy objection to such questioning as it related to Appellant's commitment under Section 302 because at the time of Dr. Abbas's evaluation, Dr. Katz had already certified Appellant's 302 commitment and Appellant had been transferred to a different hospital. *Id.* at 22, 26. The trial court sustained the objection "as to the relevance of [Dr. Abbas's report] as it relates to the certification of the 302." *Id.* at 26.

Appellant argues on appeal that because the trial court sustained PSP's relevancy objection, it was precluded from relying on Dr. Abbas's report in its

memorandum opinion. The portion of the opinion with which Appellant takes issue is as follows:

> [Appellant] remained at Muhlenberg Hospital until the following day when he was transferred to Gnaden Huetten Memorial Hospital in Lehighton. Once admitted in Gnaden Huetten, [Appellant] was seen by both Maureen McFarland, a nurse practitioner and Dr. Raja Abbas, a psychiatrist. After examination, [Appellant] remained committed to the hospital pursuant to Dr. Abbas'[s] opinion and recommendation where he stayed until his discharge on May 1, 2014, the end of the 120-hour hospitalization period.

Appellant's Brief at 24, *quoting* Memorandum Opinion, 12/7/20, at 4. We find no merit to Appellant's assertion. First, Dr. Abbas's report was introduced by Appellant at the expungement hearing, and the trial court admitted it into evidence without objection. N.T., 7/21/20, at 20–21, 39–41, Pet. Exh. 2. Thus, it is part of the record. Second, the above-referenced portion of the memorandum opinion makes it clear the trial court was merely restating the factual background of the case and not relying on the report as part of its analysis. Contrary to Appellant's assertion, the trial court recognized, in sustaining PSP's objection, that the report was not relevant to resolving the issue of whether there was sufficient evidence of Appellant's 302 commitment. In addition, as the trial court noted, pursuant to **Vencil**, its review was limited to the findings recorded by Dr. Katz and the information he relied upon in arriving at his findings. Rule 1925(a) Opinion, 2/12/21, at 6, 10; **see also** Memorandum Opinion, 12/7/20, at 10. The trial court explained as follows:

> In this case, it was Dr. Katz'[s] emergency examination performed at Muhlenberg [Hospital] and not Dr. Abbas whose assessment

- 15 -

was performed at Gnaden Huetten Memorial Hospital which was the subject of the [trial] court's analysis. … Th[e trial] court notes it did not consider Dr. Abbas'[s] assessment in [its] review of the basis for the involuntary commitment opined by Dr. Katz. It was merely referenced in [its] opinion to set forth the timeline of events that occurred here.

Rule 1925(a) Opinion, 2/12/21, at 10 (unnecessary capitalization and spacing omitted). Accordingly, no relief is due.

In his next issue, Appellant argues that the trial court erred in relying on Exhibit PSP-1. Appellant's Brief at 25–30. Specifically, Appellant claims the exhibit contained "contradictory timelines, incorrect information about [A]ppellant driving to Georgia, the representation by an unknown hospital representative, namely 'Christine H[.]' who never testified as to what she did or did not do, the electronic signature on said document by Dr. Katz, etc." *Id.* at 25. He further complains that Exhibit PSP-1 did not contain an emergency department event log from his stay at Muhlenberg Hospital.[6] *Id.* at 25. The crux of Appellant's complaint centers around a purported discrepancy in the time Appellant was evaluated, with Appellant maintaining that he was not seen within two hours of his arrival. *Id.* at 25–30.

The exhibit is Appellant's Form MH-783, which is the form issued by the Pennsylvania Department of Human Services for use in connection with 302 commitments. *See* 55 Pa.Code § 5100.86(a) ("Written applications, warrants, and written statements made under section 302 of the [MHPA] (50

___

[6] Appellant included the log as part of his Petitioner Exhibit 1, which was admitted without objection from PSP at the expungement hearing.

P.S. § 7302), shall be made on Form MH–783 issued by the Department."). Pursuant to **Vencil**, the trial court's review was limited to this very document, as it contained the information available to Dr. Katz at the time as well as his findings relating to Appellant's 302 commitment. Thus, it was not error for the trial court to rely on it, and in fact, it was essential to the trial court's review pursuant to Section 6111.1(g)(2).

To the extent Appellant is arguing the exhibit's content was erroneous (i.e., that he was not seen within two hours), and thus the trial court should not have relied on it, this issue is waived. Appellant did not object to the introduction of Exhibit PSP-1, and in fact, stipulated to it. N.T., 7/21/20, at 3–5. Appellant introduced the same document as Petitioner's Exhibit 1; however, Appellant's copy was missing the even-numbered pages of the seven-page document, while PSP's copy contained all pages. **Id.** at 3–4 (Appellant's counsel stating "Your Honor, the exhibits I have – if I can just – Attorney Lovette[, counsel for PSP], has a more comprehensive 302 commitment than I do. There is [*sic*] a couple extra pages to it. I am willing to stipulate to his"). Accordingly, this issue is without merit.

Finally, in his last issue, Appellant argues that his 302 commitment did not satisfy the factors required for such a commitment. Appellant's Brief at 30–33. This argument is merely a restatement of Appellant's sufficiency argument, of which we have already disposed, *supra*.

Based on the foregoing, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 10/8/2021